Ross BOHANNON, Appellant,

v.

The FRANKLIN NATIONAL BANK OF
LONG ISLAND, Appellee.

No. 16463.

Court of Civil Appeals of Texas.

Dallas.

Feb. 19, 1965.

Elgar L. Robertson, Dallas, for appellant.

Wynne, Jaffe & Tinsley and Yandell Rogers, Jr., Dallas, for appellee.

DIXON, Chief Justice.

Appellant Ross Bohannon has appealed from a summary judgment rendered against him in a suit filed by The Franklin National Bank of Long Island on a promissory note signed by Bohannon in the principal amount of $7,500 dated September 4, 1962, due November 5, 1962. The judgment was for $9,795, which included principal, accrued interest and attorney's fees.

In a sworn amended answer Bohannon alleged that there was no consideration for his execution of the note, that he signed the note merely as an accommodation mak-

er for the benefit of the Bank, and that he was induced to sign the instrument by fraudulent representations by a Bank official.

We quote part of appellant's amended answer in connection with his allegations of fraud:

"YOUR DEFENDANT would show that he was not personally acquainted with the officers or agent of said bank making such representations to him *but he was represented to be and YOUR DEFENDANT is informed and believes* and here, now alleges the facts to be that the person representing such bank and making such representations was one, Richard E. Ast, *purported* to be the Manager of said Plaintiff bank." (Emphasis ours)

A detailed statement of appellant's claim of fraud will be presented later in this opinion.

Bohannon's amended answer was filed subsequent to the filing of the Bank's motion for summary judgment and subsequent to the execution by Richard E. Ast and George F. Doherty, Bank officials, of affidavits in support of the Bank's motion.

The pleadings and affidavits of the parties agree that the note sued on was one of a series of renewal notes, the original note having been in the principal amount of $10,000, dated November 1, 1961 and due December 1, 1961.

Seven exhibits, reproductions of the Bank's records, are attached to the affidavits of the two Bank officials. The substance of the affidavits and exhibits may be summarized as follows:

Prior to November 1, 1961 the Bank had made a number of loans to a corporation known as Sovereign Resources, Inc., in which appellant Bohannon and C. M. Wood were substantial stockholders; in November 1961 the corporation was not indebted to the Bank but needed money; the Bank was unwilling to lend the corporation the money; it was then arranged for several stockholders to sign notes individually, the proceeds to be advanced to the corporation; no collateral was posted at any time to secure any of the notes; a payment of $5,000 on Bohannon's note was received on December 8, 1961; on March 2, 1962 Bohannon from Dallas forwarded by mail to the Bank his signed note for $7,500 with instructions to "credit the additional proceeds to Sovereign Resources, Inc."; on January 7, 1963 Bohannon forwarded another signed renewal note for $7,500 together with a promise to make a reduction of the principal amount on the next due date, February 15, 1963; the Bank refused to accept this proffered renewal note and demanded payment of the note executed by Bohannon on September 4, 1962, on which note this suit is based.

In answer to appellee's motion for summary judgment appellant Bohannon presented his affidavit in which he alleges that he did not sign a letter dated October 27, 1961 at Dallas, Texas which accompanied his original $10,000 note dated November 1, 1961 and in which letter the Bank was told to apply the proceeds of the note "in accordance with instructions from Mr. C. M. Wood of Sovereign Resources"; that his signature on said letter is a forgery (he does not deny signing the note itself); that he did not make the payment of $5,000 on December 8, 1961 and if such payment was made it was apparently made by Sovereign Resources, Inc., or C. M. Wood or Howard K. Low.

In his affidavit Bohannon makes these allegations in support of his charges of fraud on the part of the Bank:

"That heretofore, to-wit, during the month of October 1961, * * * I was in New York City at the office of Sovereign Resources, * * * and there were present at such time C. M. Wood and Howard K. Low and Solon Snowden.

"*Mr. Low and Mr. Wood stated to Mr. Snowden and me* at such time that

the Franklin National Bank of Long Island had loaned excessive amounts of money to Sovereign Resources and to C. M. Wood and Howard K. Low and that the bank had requested that such loans be broken up into smaller loans among numerous people as the bank examiners were raising a question as to the amounts loaned to Sovereign Resources, Wood and Low. *At such time Howard K. Low, in my presence, called the Franklin National Bank and talked to some gentleman over there who he informed me was Mr. Richard E. Ast* and while speaking with this gentleman on the telephone, handed me the receiver and asked that I talk with him. *The gentleman on the telephone, who I was informed was Mr. Ast,* stated to me at such time that the bank had over-extended itself in loans to Sovereign Resources, Inc., C. M. Wood, and Howard K. Low and that, while such loans were well secured with Sovereign stock and other collateral, the bank examiners were raising serious questions about such loans and that he and others were likely to lose their jobs because of same. He further stated to me over the telephone that if I, together with Mr. Snowden and other people whom I represent, would sign notes to replace a portion of the notes of Sovereign Resources, Mr. Wood and Mr. Low, it would be a great favor to him and to the bank and we would accommodate the bank in this respect. He stated that the bank would keep the collateral that was presently pledged to secure notes which would be replaced by notes that he asked me and my people to sign, and as it was more than sufficient to cover the amount of the notes we would sign, that we would never have to personally pay the same and that the bank would look to the collateral only." (Emphasis ours)

Neither Mr. Low nor Mr. Wood are shown to have any connection whatever with the Bank.

## OPINION

Appellant's six points on appeal assert that the record raises fact issues with reference to the matters pled defensively in his answer and controverting affidavit.

It is plain from the above quoted allegations that Bohannon's claim that he was only an accommodation maker for the Bank and his claim of false representations by the Bank's officials are based on pure hearsay. As such the allegations cannot be given any weight in a summary judgment proceeding. Keahey v. Dallas Teachers Credit Union, Tex.Civ.App., 374 S.W. 2d 450. Hearsay evidence is no evidence at all. Texas Co. v. Lee, 138 Tex. 167, 157 S.W.2d 628, 631.

Appellant's claim that his signature was forged to the letter dated October 27, 1961 mailed with the note for $10,000 dated November 1, 1961 and his claim of a lack of consideration become immaterial in the light of subsequent events. The Bank is not suing on the $10,000 note of November 1, 1961 and does not need to rely on the letter of October 27, 1961. The Bank is suing on the renewal note of September 4, 1962 in the amount of $7,500 and the letter of March 22, 1962.

When the amount due was increased from $5,000 to $7,500 Bohannon by letter dated March 22, 1962 forwarded the new note to the Bank. In this letter he stated: "Enclosed is my note for $7,500. *Would you please credit the additional proceeds to the account of Sovereign Resources, Inc.*" (Emphasis ours) Bohannon does not deny the genuineness of his signature to this note or this letter.

Neither does Bohannon deny his signature to his letter of January 17, 1963 proffering another renewal note in the amount of $7,500. In this letter Bohannon said, "Enclosed in accordance with your request is my note coming due February 15th. *At that time I plan to make a reduction in the principle amount.*" (Emphasis ours) This is the note which the Bank declined to

accept, electing to stand on the note for $7,500 of September 4, 1962.

The two letters above quoted confirm Bohannon's indebtedness of $7,500 as claimed by the Bank and as represented by the note sued on. Bohannon does not allege accident or mistake in the execution of the note. His claims of fraud and lack of consideration, being based on hearsay, cannot stand. There is no ambiguity in the note. It is a plain promise to pay. Appellant's points on appeal are overruled. The court properly rendered summary judgment for appellee.

The judgment is affirmed.

Affirmed.